[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-----------------------------------------

No. 04-16062
Non-Argument Calendar

-----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 13, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00204-CV-WCO-2

ROBERT FORD HALL,

                                        Plaintiff-Appellant,

                        versus

MILTON E. NIX, JR.,
GARFIELD HAMMONS, JR.,
BETTY ANN COOK,
EUGENE P. WALKER,
J. MICHAEL LIGHT, et al.,

                                        Defendants-Appellees.

-----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

-----------------------------------------------------------------

(September 13, 2005)

Before EDMONDSON, Chief Judge, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Robert Ford Hall, an inmate in the Georgia prison system, appeals the district court's grant of summary judgment in favor of Defendant-Appellees, members of the Georgia State Board of Pardons and Paroles (the "Board"), dismissing Hall's section 1983 claims, 42 U.S.C. § 1983. No reversible error has been shown; we affirm.

Hall was convicted of vehicular homicide arising from reckless driving and of a separate misdemeanor charge of driving while it was less safe to operate a vehicle. The acts for which he was convicted were committed in March of 1997. For these crimes, Hall was sentenced to a fifteen-year term, with thirteen years to serve and the balance probated. The Board first considered Hall for parole under a policy that required inmates convicted of one or more of some twenty enumerated offenses to serve ninety percent of their sentences before becoming eligible for an initial parole hearing. Under this policy -- adopted by the Board after Hall committed the acts of conviction[1] -- Hall's tentative parole month ("TPM") was determined by the Board to be May 2009. Absent this policy change, Hall's TPM would have been calculated under the grid system of the Parole Decision

---

[1] The Board adopted this 90 percent-to-serve policy on 9 December 1997 and applied it to all inmates convicted after 1 January 1998.

2

Guidelines; under the grid system, Hall's TPM would have required -- subject to discretionary adjustment by the Board -- considerably fewer months-to-serve.

The retroactive application of the 90 percent-to-serve policy to inmates whose offense conduct pre-dated adoption of that policy was determined to constitute an ex post facto violation in Jackson v. State Board of Pardons and Paroles, No. 2:01-CV-068-WCO; 2002 WL 1609804 (N.D.Ga. 2002).[2] After the Jackson decision, the Board resolved (i) to apply the 90 percent-to-serve policy only to those offenders who committed their crimes on or after 1 January 1998; and (ii) to reconsider for parole those offenders who committed their offenses before 1 January 1998 to whom the 90 percent-to-serve policy had been applied.

Hall takes issue with the Board's post-Jackson calculation of his TPM. Hall argues that the Board's ostensible reconsideration of his parole release date was a sham; according to Hall, only a token adjustment was made to mask the Board's continued ex post facto application of its 90 percent-to-serve policy. Hall claims he was entitled to a TPM under the Guidelines grid score -- 16 months -- as opposed to the 120 months-to-serve determined by the Board in its post-Jackson

_____

[2]We assume for purposes of this appeal -- and the Board does not argue otherwise -- that, as the Jackson court concluded, application of the Board's 90 percent-to-serve policy to inmates whose crimes were committed before the policy was adopted would implicate the ex post facto clause.

3

reconsideration of Hall's TPM. Hall contends that the Board's acts are in violation of constitutional protections under the ex post facto and due process clauses.

About Hall's ex post facto claim, the district court concluded that Hall had proffered insufficient evidence that a new law or regulation or policy was being retroactively applied by the Board. We agree. While Hall is long on hyperbole, he is short on evidence to support his conclusory allegations. Naked accusations are no substitute for evidence and do not defeat summary judgment. See Leigh v. Warner Bros. Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (conclusory allegations without specific facts in support have no probative value). The record reflects that the Board exercised its discretion to deviate from the Parole Guidelines grid score based on specific reasons set our in the Board's notice dated 29 September 2003.[3] No sufficient facts were proffered to create a material issue of fact on Hall's ex post facto allegations. The record shows that Hall is being required to serve more of the sentence imposed for his acts because of the Board's exercise of discretion; the record fails to support Hall's claim that a new law, rule or policy is being retroactively applied.

---

[3]The Board twice reconsidered Hall's TPM after the Jackson decision. In November 2002, the Board determined to require Hall to serve 120 months before parole, 20 months less than the period required under the 90 percent-to-serve policy. The Board's calculations were based on a crime severity level of V. Hall's crime severity level was later corrected to be a crime severity level of IV. Nonetheless, on 29 September 2003, when the Board again reconsidered Hall's TPM in the light of the level IV correction, it determined that no change in Hall's TPM was warranted.

About Hall's due process claims, the district court concluded correctly that, under <u>Sultenfuss v. Snow</u>, 35 F.3d 1494, 1502 (11th Cir. 1994), Hall has no cognizable liberty interest in parole. <u>See</u> <u>Sultenfuss</u>, ("[v]iewing Georgia's parole system in its entirety, we conclude that no protected liberty interest in parole is created"); <u>Jones v. Ray</u>, 279 F.3d 944, 946 (11th Cir. 2001) (Georgia inmates are foreclosed by <u>Sultenfuss</u> from making a liberty interest due process claim based on state law and no federal constitutional right to parole exists independent of a state created liberty interest).

AFFIRMED.